IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH SINGLETON, | : |
| | : |
| Plaintiff, | :  CIVIL ACTION |
| | : |
| v. | :  No. 09-cv-1423 |
| | : |
| LYNDALL MEDEARIS, JR., et al., | : |
| | : |
| Defendants. | : |

**MEMORANDUM and ORDER**

Joyner, J.                                                 October 28, 2009

Before the Court are Defendants' Motions to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(f). (Doc. Nos. 14 and 15.) Plaintiff's responses to both Defendants are also before the Court. (Doc. Nos. 18 and 19.) For the reasons set forth in the following memorandum, we will grant in part and deny in part.

Background

Plaintiff Keith Singleton ("Plaintiff") filed his Complaint against Defendants Lyndall C. Medearis ("Medearis") and AXA Advisors, LLC ("AXA") on April 2, 2009, in this Court. Plaintiff resides in Schwenksville, Pennsylvania. Medearis resides in Bellaire, Texas. AXA is a New York Corporation with its principal place of business in New York, New York.

1

On April 6, 2000, Plaintiff opened a brokerage account with Medearis, who was operating as a financial planner and investment advisor on behalf of AXA.  From April 6, 2000 until approximately October 2008, Plaintiff maintained a brokerage account with AXA.  During that time period, Plaintiff relied on the advice of Medearis and AXA and transferred money from the brokerage account to life insurance products and mutual funds, all maintained and operated by AXA or its affiliates.

Between March 2007 and June 2008, Medearis advised Plaintiff that he could invest Plaintiff's money in other, alternative investment products.  Medearis told Plaintiff that these products could potentially earn Plaintiff a higher return on his investment compared to the expected return from the mutual funds and life insurance products in which Plaintiff was previously investing his money.

Medearis convinced Plaintiff to give the money for these alternative investment products directly to Medearis in cash and checks.  Medearis advised Plaintiff that he would invest the money into the new investment products and that Plaintiff would receive at least fifteen to twenty percent in return on his investment.  During this time period, Plaintiff gave Medearis approximately $500,000 to invest in these alternative instruments.

Plaintiff claims to have given the money to Medearis in

reliance on Medearis's promises that he would invest the money and that the return on the investment would yield fifteen to twenty percent.  However, Plaintiff later learned that instead of investing the money, the cash and checks were diverted into Medearis's personal accounts for his own use.  In February 2009, AXA terminated its affiliation with Medearis upon receiving information that Medearis stole money from AXA.

Plaintiff seeks to recover damages in an amount not less than $500,000.  Plaintiff's Complaint alleges six counts: (I) fraudulent concealment (against Medearis), (II) conversion (against Medearis), (III) breach of fiduciary duty (against both Defendants), (IV) unjust enrichment (against Medearis), (V) negligence (against AXA), and (VI) breach of contract (against both Defendants).  Medearis filed a Motion to Dismiss Counts I, II, III, IV, and VI.  Medearis has also requested this Court to strike and/or dismiss Plaintiff's request for injunctive relief in the counts against Medearis.  Medearis has further requested that this Court strike Plaintiff's demand for legal fees in the counts against Medearis.  AXA filed a Motion to Dismiss Counts III, V, and VI.  AXA has further requested that this Court strike Plaintiff's claims for injunctive relief in Counts III and VI.  The Motions from both Defendants are under consideration below.

<u>Standards of Review</u>

### I.   12(b)(6) Motion to Dismiss

In response to a pleading, under Federal Rule of Civil Procedure 12(b)(6), a defendant may assert by motion that the plaintiff's complaint "[fails] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In analyzing a Rule 12(b)(6) motion to dismiss, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'"  Id. at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  In other words, the plaintiff must provide enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a particular cause of action.  Id. at 234.  In ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents integral to or explicitly relied upon in the complaint. In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999).

### II.  12(f) Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that "[u]pon motion made by a party . . . the court may order stricken from

4

any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court should not grant a motion to strike an allegation unless the allegation is clearly insufficient. Cipollone v. Liggett Group, Inc., 789 F.2d 181 (3d Cir. 1986).

## Discussion

### I. 12(b)(6) Motions to Dismiss

#### A. Count I - Fraudulent Concealment against Medearis

Count I of Plaintiff's Complaint alleges a claim of fraudulent concealment against Medearis. A claim of fraudulent concealment must establish that the defendant: (1) made a knowingly false representation of fact; (2) intentionally concealed true facts with the purpose of deceiving the plaintiff; or (3) intentionally failed to disclose non-privileged material facts to the plaintiff. Sewack v. Lockhart, 699 A.2d 755, 759-60 (Pa. Super. Ct. 1997) (citing Rest. 2d Torts § 550). Additionally, the defendant's fraudulent concealment must be intentional and material. Id. A "material" misrepresentation or concealment is of such character that had it not been made, the transaction would not have occurred. Id. Finally, a defendant's liability exists only if the defendant prevents the plaintiff from making an investigation he or she would have otherwise made. Id.

Medearis claims that Plaintiff has omitted an element for fraudulent concealment and has therefore insufficiently pled a claim for fraudulent concealment.  Specifically, Medearis asserts that Plaintiff failed to aver that Medearis prevented him from making an investigation that he would have otherwise made.  Instead of responding directly to Medearis's Motion to Dismiss this count, Plaintiff states that a count for fraud has been established and asks the Court for leave to amend his Complaint to include a count for fraud, not fraudulent concealment.

Because Plaintiff has not contended that Medearis prevented him from making an investigation that he would have otherwise made, Plaintiff's Complaint does not sufficiently plead a claim of fraudulent concealment.  The Court therefore must grant Medearis's Motion to Dismiss Count I but will grant Plaintiff leave to amend his Complaint.

**B.   Count II - Conversion against Medearis**

Count II of Plaintiff's Complaint alleges a claim for conversion against Medearis.  Conversion, under Pennsylvania law, is the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith without the owner's consent and without legal justification. <u>Universal Premium Acceptance Corp. v. York Bank & Trust Co.</u>, 69 F.3d 695, 704 (3d Cir. 1995); <u>Norriton East Realty Corp. v. Central-Penn</u>

National Bank, 254 A.2d 637, 638 (Pa. 1969); Eisenhauer v. Clock Towers Assoc., 582 A.2d 33, 36 (Pa. 1990).

Conversion can be committed in several ways: (1) acquiring possession of the chattel with the intent to assert a right to it which is adverse to the owner; (2) transferring the chattel and thereby depriving the owner of control; (3) unreasonably withholding possession of the chattel from one who has the right to it; or (4) misusing or seriously damaging the chattel in defiance of the owner's rights. Fort Washington Resources, Inc. v. Tannen, 846 F. Supp. 354, 361 (E.D. Pa. 1994) (citing Norriton, 254 A.2d at 638). Where one lawfully comes into possession of the chattel, a conversion occurs if a demand for the chattel is made by the rightful owner and the other party refuses to deliver. Id. Additionally, the defendant need not have a conscious intent of wrongdoing to be liable for conversion, as long as he has exercised wrongful control over the goods. Id.

Medearis asserts that Plaintiff's claim for conversion should be dismissed because Plaintiff consented to giving Medearis money to invest in alternative products. Medearis suggests that Plaintiff seeks damages from him because Plaintiff did not receive the desired return on the investment. Plaintiff avers in his Complaint that he gave Medearis $500,000 to invest in financial products. Later, Plaintiff learned that Medearis

7

did not invest the money and instead diverted the funds in his own personal accounts.  When Plaintiff subsequently requested a repayment of his money, Medearis refused.

Plaintiff's pleadings are sufficient to establish a claim for conversion.  Plaintiff has alleged that Medearis took Plaintiff's money with the intent to divert the funds into personal accounts instead of investing it, which satisfies the pleading requirements for conversion because Plaintiff claims that Medearis adversely asserted a right over Plaintiff's money. By alleging that Medearis transferred Plaintiff's money into Medearis's personal accounts instead of investing the money, Plaintiff has also sufficiently pled a claim for conversion because Plaintiff alleges that Medearis transferred Plaintiff's money and deprived Plaintiff of control over it.  Even if Medearis lawfully came into possession of Plaintiff's money through their professional relationship, if Plaintiff's money was placed in Medearis's personal accounts as Plaintiff alleges and was not invested, and if Plaintiff requested a return of the funds, then Medearis could be liable for conversion by refusing to deliver the money to Plaintiff as rightful owner.

Plaintiff has sufficiently pled Count II, and Defendant Medearis's Motion to Dismiss Count II is denied.

**C.    Count III - Breach of Fiduciary Duty against Both**

**Defendants**

Count III of Plaintiff's Complaint alleges a breach of fiduciary duty against both Defendants.  Under Pennsylvania law, claims for breach of fiduciary duty include the following elements: (1) the defendant's negligent or intentional failure to act in good faith and solely for the plaintiff's benefit in all matters for which the defendant was employed; (2) the plaintiff's injury; and (3) the plaintiff's injuries were brought about as a result of the defendant's failure to act solely for the plaintiff's benefit.  Dinger v. Allfirst Financial, Inc., 82 Fed. Appx. 261, 265 (3d Cir. 2003) (citing McDermott v. Party City Corp., 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998)). Furthermore, a fiduciary relationship exists where one person places special confidence in another, either because one side has "overmastering dominance" or the other side has "weakness, dependence or justifiable trust," and the parties therefore do not deal with each other on equal terms.  Id. (quoting Commonwealth Dept. of Transp. v. E-Z Parks, Inc., 620 A.2d 712, 717 (Pa. 1993)).  This confidential relationship may be based on a business association, "only if one party surrenders substantial control over some portion of his [or her] affairs to the other." Id. (internal quotations omitted).  "When a person authorizes another to act as his or her agent, the relationship between the two may be characterized as a fiduciary relationship."  Id.

9

(citing Sutliff v. Sutliff, 528 A.2d 1318, 1323 (Pa. 1987)).  An agent owes a duty to his principal "of loyalty in all matters affecting the subject of his agency, and the agent must act with the utmost good faith in the furtherance and advancement of the interests of his principal." Id. at 627 (internal quotations omitted).

    Medearis asserts that Plaintiff's claim should be dismissed because it does not refer to or cite state or federal law supporting his breach of fiduciary duty claim.  Plaintiff, on the other hand, claims that he has stated legally sufficient factual allegations in order to state a claim for breach of fiduciary duty against both Defendants.  Plaintiff alleges that Medearis failed to use Plaintiff's investment money in the manner for which Medearis was employed, Plaintiff suffered an injury from this failure to act in good faith, and this failure caused Plaintiff's injury.  Additionally, Plaintiff pled that he relied on Medearis's representations as a financial advisor when he gave him several hundred thousand dollars to invest in the alternative investment products.  Therefore, Plaintiff has sufficiently pled factual allegations for a claim of breach of fiduciary duty against Medearis.

    AXA asserts that Plaintiff's claim should be dismissed because Plaintiff does not allege a fiduciary relationship with AXA.  AXA claims that Plaintiff is actually alleging a failure to

supervise Medearis instead of a breach of fiduciary duty, and therefore, Plaintiff's Complaint is repetitive.  Plaintiff asserts that he had a business relationship with AXA through its agent, Medearis.  The Complaint includes factual allegations which show the existence of a fiduciary relationship.  Therefore, AXA's Motion to Dismiss Plaintiff's claim for breach of fiduciary duty is denied.

        D.    **Count IV - Unjust Enrichment against Medearis**

Count IV of Plaintiff's Complaint alleges that Medearis was unjustly enriched.  Unjust enrichment is a quasi-contract remedy where the contract is implied in law, and imposes a duty on one party to another, when one party has received an unfair benefit at the other's expense. Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 998-99 (3d Cir. 1987) (citing Schott v. Westinghouse Electric Corp., 259 A.2d 443, 449 (Pa. 1969)).  To show unjust enrichment, the claimant must demonstrate "that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." Hershey, 828 F.2d at 999 (citing Torchia ex rel. Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. Ct. 1985)).  The claimant must show: (1) that the plaintiff conferred benefits on the defendant; (2) the defendant appreciated those benefits; and (3) acceptance and

retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001) (citing Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993)).

Medearis asserts that Plaintiff's claim for unjust enrichment should be dismissed because paragraph 43 of the Complaint does not allege elements necessary to establish a claim. Specifically, Medearis claims that Plaintiff does not identify how he benefitted from Plaintiff's funds. However, Plaintiff's claim for unjust enrichment includes more than just paragraph 43 of his Complaint. The claim centers upon Medearis's role as Plaintiff's financial planner and the fact that Plaintiff gave him over $500,000 to invest on his behalf. Plaintiff also learned that Medearis diverted funds to his personal accounts for his own use. By claiming that Medearis diverted funds into his personal accounts instead of investing the money, Plaintiff has sufficiently alleged that Medearis appreciated the benefits of Plaintiff's money. Evidence of this allegation can be reasonably expected to be found through discovery, making dismissal inappropriate at this stage.

Plaintiff has sufficiently pled a claim for relief in Count IV. Therefore, Medearis's Motion to Dismiss Count IV is denied.

**E. Count V - Negligence against AXA**

Plaintiff alleges a claim of negligence against AXA in Count V. It is well-established that a claim for negligence under Pennsylvania law contains four elements: (1) a duty or obligation recognized by the law requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required, (i.e. a breach of that duty); (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another. Northwestern Mutual Life Insurance Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005); City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415, 422 n.9 (3d Cir. 2002); Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998).

Although Pennsylvania courts recognize claims for negligent supervision, see, e.g., Dempsey v. Walso Bureau, Inc., 246 A.2d 418 (Pa. 1968); Hutchinson ex rel. Hutchinson v. Luddy, 742 A.2d 1052 (Pa. 1999); Heller v. Patwil Homes, Inc., 713 A.2d 105 (Pa. Super. Ct. 1998), Pennsylvania courts consider "general tort principles of negligence" when recognizing claims for employer negligence. Heller, 713 A.2d at 107. An employer is liable for negligent supervision when he does not exercise "due and reasonable care," just as an individual is liable for negligence under the same standard. Id. (citing Dempsey, 246 A.2d at 422).

AXA argues that the negligence claim is one of negligent supervision, and therefore Plaintiff's count should be dismissed for failure to state the elements of negligent supervision. Plaintiff submits that he has fully pled a claim of negligence, but he responds to AXA's characterization of the claim as one for negligent supervision.

Plaintiff's Complaint alleges several duties owed by AXA to protect and warn Plaintiff of Medearis's conduct as well as a duty to supervise Medearis, and he cites several different sources for this duty. Additionally, Plaintiff's Complaint includes allegations of a breach of those duties, the connection of the breach of duty to Plaintiff's injury, and the subsequent damages from the injury. Because Pennsylvania courts view negligent supervision as a subset of general negligence, it suffices that Plaintiff has alleged negligence instead of negligent supervision. Plaintiff has sufficiently pled a claim for negligence against AXA; therefore, AXA's Motion to Dismiss Count V is denied.

### F. Count VI - Breach of Contract against Both Defendants

Count VI of Plaintiff's Complaint alleges breach of contract against both Defendants. To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege the following: (1) the existence of a contract, including its essential terms;

(2) a breach of a duty imposed by the contract; and (3) resultant damages. Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Enforceable contracts are mutual obligations, the nature and extent of which must be certain; the parties must have agreed on the material and necessary details of their bargain. Lackner v. Glosser, 892 A.2d 21, 30 (Pa. Super. 2006) (citing Peck v. Delaware County Board of Prison Inspectors, 814 A.2d 185, 191 (Pa. 2002)).

Medearis and AXA contend that Count VI should be dismissed because the Complaint fails to identify the terms of the contract and which terms of the contract were breached. Plaintiff maintains that when he opened his investment accounts with Medearis and AXA, the two Defendants made express and implied contracts to invest Plaintiff's money for his benefit. Plaintiff claims that Medearis breached the contract by diverting the funds and that AXA breached the contract by allowing the funds to be diverted. Plaintiff claims that he was harmed as a result of the fund diversion. In doing so, Plaintiff has sufficiently pled a claim for breach of contract against Medearis and AXA. Therefore, both Motions to Dismiss Count VI for breach of contract are denied.

**II.  12(f) Motions to Strike**

**A.   Motions to Strike Plaintiff's Requests for Preliminary and Permanent Injunctive Relief**

Counts I, II, III, IV, and VI of Plaintiff's Complaint request "preliminary and permanent" injunctive relief. Specifically, Plaintiff requests that "any accounts of funds owned or held by Medearis be turned over to [Plaintiff]." Both Defendants move to strike Plaintiff's claims for preliminary and permanent injunctive relief. Defendants state that Plaintiff has not pled any of the elements necessary to grant a preliminary or permanent injunction.

To establish the right to relief through a preliminary injunction, the moving party must show the following: (1) success on the merits is likely; (2) irreparable injury will result if injunctive relief is denied; (3) granting the preliminary injunction will not cause greater harm to the non-movant; and (4) public interest favors injunctive relief. <u>Rogers v. Corbett</u>, 468 F.3d 188, 192 (3d Cir. 2006) (citing <u>Kos Pharms., Inc. v. Andrx Corp.</u>, 369 F.3d 700 (3d Cir. 2004)). The standard for granting a permanent injunction differs from the standard governing a preliminary injunction. <u>American v. Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ.</u>, 84 F.3d 1471, 1477 (3d Cir. 1996)). A court may grant a permanent injunction where the moving party has shown: (1) jurisdiction is appropriate; (2) the movant "has actually succeeded on the

merits" of his claim; and (3) balancing equities favors granting injunctive relief.  <u>Chao v. Rothermel</u>, 327 F.3d 223, 228 (3d Cir. 2003).

Plaintiff has not moved for a preliminary injunction. Rather, Plaintiff has merely requested an injunction as a possible remedy in Counts I, II, III, IV, and VI of his Complaint.  Because Plaintiff has not filed a motion requesting a preliminary injunction, the Court will not consider whether a preliminary injunction should be granted.  Since Plaintiff's request is not scandalous, redundant, immaterial, or impertinent, the Court declines to strike.  Therefore, Defendants' Motions to Strike Plaintiff's request for preliminary injunctive relief are denied.

As to Plaintiff's request for permanent injunctive relief, this is relief that the Court may consider if Plaintiff succeeds on the merits.  Since this would occur at the end of litigation, it is inappropriate for the Court to limit the remedies available to Plaintiff, and his request for permanent injunctive relief will not be stricken from the Complaint.  Therefore, Medearis's and AXA's Motions to Strike Plaintiff's requests for permanent injunctive relief are denied.

**B.    Defendant Medearis's Motion to Strike Plaintiff's Claim for Legal Fees**

Counts I, II, III, IV, V, and VI of Plaintiff's Complaint request "an award of costs and disbursements, including legal fees." Generally, the allowance of an award of attorney's fees "must be expressly provided for by statute." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 267-68 (1975). Only Medearis moves to strike Plaintiff's request for legal fees. According to Medearis, Plaintiff has failed to cite an agreement between the parties or statutory authorization to support his request for legal fees. In response, Plaintiff, instead of referring to statutory authority or an agreement between the parties, asserts that in the event that the Court would enter judgment in his favor, then the award of attorney fees would be a form of appropriate relief. Plaintiff relies on Seaboard Surety Company v. Permacrete Construction Corporation, which states that when a plaintiff seeks to recover expenditures from investigating a third party claim, the plaintiff, if due to the tort of another, "has been required to act in the protection of his interests" through litigating his action against a third party "is entitled to recover compensation for the reasonably necessary loss of time, attorney fees, and other expenditures thereby suffered or incurred." 221 F.2d 366 (3d Cir. 1955) (citations omitted).

In Seaboard, the Third Circuit Court of Appeals relied on the fact that there was an additional suit between the

defendants, into which the plaintiff necessarily had to investigate in order to protect his assets.  Although such is not the case here, Plaintiff has only initiated suit to recover funds.  The Court is not determining whether Plaintiff is entitled to recover legal fees; this consideration would occur at a later stage in the instant matter.  No party has yet been determined to have prevailed.  Therefore, Medearis's Motion to Strike Plaintiff's requests for an award of attorney's fees is denied.

## Conclusion

For the reasons set forth in this Memorandum, Medearis's Motion to Dismiss Count I and AXA's Motion to Dismiss Count V are granted and denied in all other regards.  Both Motions to Strike are denied.  An appropriate Order follows.